## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| STEVEN C. BRIGATI, on behalf of himself and all others similarly situated, Plaintiff, <br><br> v. <br><br> WORCESTER POLYTECHNIC INSTITUTE, a Massachusetts nonprofit corporation, and HFM, INC., a Florida for profit corporation, Defendants. | **CLASS REPRESENTATION** <br><br> **CASE NO.:** |

## CLASS ACTION COMPLAINT FOR DECLARATORY, SUPPLEMENTAL AND INJUNCTIVE RELIEF AND DAMAGES

Individually, and on behalf of others similarly situated, Plaintiff, STEVEN C. BRIGATI ("Plaintiff" or "Mr. Brigati"), lodges his Complaint against Defendants, WORCESTER POLYTECHNIC INSTITUTE, a Massachusetts nonprofit corporation ("WPI"), and HFM, INC., a Florida for profit corporation ("HFM"), and states:

1.      This is an action for Declaratory and Supplemental Relief, Injunctive Relief and Damages in which the amount in controversy exceeds $5 million, exclusive of interest, costs and attorneys' fees.

### I. Jurisdiction, Venue and Parties

2.      28. U.S.C. section 1332(d) vests the Court with jurisdiction over this action in that the amount in controversy exceeds $5 million and Plaintiff, Mr. Brigati, is a citizen of a different state than Defendant WPI.

3.      Venue is proper in Southern District of Florida because the real and

1

personal property at issue is in St. Lucie County and the transactions at issue occurred in St. Lucie County, Florida.

4.      Plaintiff STEVEN BRIGATI is *sui juris,* an individual and a citizen of the State of Florida, who owns a home in the master planned community known as The Reserve in Port St. Lucie, St. Lucie County, Florida. In 2015, Mr. Brigati purchased an equity golf and tennis master membership in the Legacy Golf and Tennis Club, which is located in The Reserve, and he has paid dues annually to maintain his equity golf and equity tennis memberships.

5.      Defendant, HFM, is a for profit corporation, organized and existing under the laws of the State of Florida, which has its principal place of business at 9000 Clubhouse Drive in Port St. Lucie, St. Lucie County, Florida.

6.      Defendant, WPI, is a nonprofit corporation, organized and existing under the laws of the Commonwealth of Massachusetts, which owns HFM and does business in St. Lucie County, Florida.

## II.   General Allegations

7.      Plaintiff seeks relief individually and on behalf of all owners of equity/voting memberships in the Legacy Club.

## A.        The Reserve Club

8.      To promote home purchases in the Reserve Planned Unit Development, Barbara, George and Jim Fazio (collectively, "the Fazios") incorporated The Reserve Golf and Tennis Club as a Florida nonprofit corporation ("The Reserve

2

Club") in November 1984, declaring that its "sole purpose" was "to own and operate a private club for the exclusive pleasure and recreation of its members." *See* Exhibit 1, Plan of Offering for the Legacy Club, dated September 1, 1996 ("Plan of Offering") at 36. The Articles of Incorporation of The Reserve Club also proclaim that it "is one which does not permit pecuniary gain or profit." *Id.*

9. After George Fazio died, his widow, Barbara, and nephew, Jim Fazio, sold The Reserve Club to Jack B. Piatt and his family in October 1987.

10. In April 1991, Mr. Piatt informed The Reserve Club's members that the Piatt family intended to sell the club. *See* Exhibit 2, April 25, 1991 Letter from Jack Platt, at 4. At that time, 226 equity golf memberships in The Reserve Club had been sold. The Piatt family undertook to turn over control and ownership of The Reserve Club to the equity members when 350 equity golf memberships in the club were sold. *See id.* at 4.

11. On January 3, 1996, through G.B.F. Reserve Development Corp., Jack Piatt assigned and transferred to HFM, Inc. (i) "all unissued memberships of any type of nature", *inter alia,* the 119 remaining, unissued master or equity golf memberships and issuable equity tennis memberships in The Reserve Club, subject to the provisions of the By-laws of The Reserve Club and (ii) all rights, interest and claim arising under and pursuant to the Agreement to … Turnover…." *See* Exhibit 3, Assignment and/or Transfer of Certificates, Permits, Licenses and Contract Rights.

**B.          The Legacy Club**

12.     The name of The Reserve Club was changed to the Legacy Golf and Tennis Club ("The Legacy Club") on July 31, 1996, and all existing equity members of The Reserve Club became equity voting members of The Legacy Club.  *See* Exhibit 1 at  44.  The Plan of Offering sets forth the terms and conditions on which memberships in the Legacy Club were purchased after September 1, 1996 and the respective rights and obligations between all the Club's members and HFM, Inc.

13.     After September 1, 1996, each applicant for membership in the Legacy Club was required to "agree to be bound by all of the [Plan of Offering's] respective terms and conditions." Exhibit 1 at 22.

14.     In the Plan of Offering, HFM undertook to "control the Club's management until transfer of the ownership, management and control is made to the Club members" on the terms set forth in the "Turnover Agreement".  Exhibit 1 at 7, 16.

15.     The Plan of Offering created "three classes of equity voting memberships…golf and tennis memberships ('Master Membership'), golf memberships ('Golf Membership') and tennis memberships ('Tennis Membership')". *See* Exhibit 1 at 8, §A.

16.     The Plan of Offering required HFM to limit the equity golf memberships to 350 unless a second golf course had been built and to limit the equity tennis memberships to 450.  Exhibit 1 at 9, §B.

17.     One (1) championship golf course was built in the Legacy Club

residential development prior to 1996; none has been built since then.  Upon information and belief, HFM sold the land on which a second golf course could have been built to the Professional Golf Association ("PGA").  The PGA built a golf course a short distance from the Legacy residential development.

18.     The Plan of Offering also required HFM to build a Clubhouse when 300 equity master and/or equity golf memberships were sold. Exhibit 1 at 16.

19.     There is a Clubhouse in the Legacy development.

20.     Robert ("Bob") Foisie was the majority shareholder of HFM from 1996 through February 2016.

21.     Between 1996 and 2016, HFM sold the 119 remaining unissued master or equity golf memberships in the Club with the promise that, within sixty days after 350 equity golf and 180 equity tennis memberships were sold (the "Turnover Date"), ownership of the Legacy Club and all of its assets would be transferred to the equity members of the Club, and control of the Club would be turned over to the equity members.  *See* Agreement to Turnover in Exhibit 1 at  27-28, §E.

22.     More than 226 equity golf and tennis master members and equity golf members, who purchased their memberships before September 1, 1996, expected to own and operate the Club with the other equity/voting members. *See* Exhibit 2 at  4.

23.     On April 28, 2017, Bob Foisie sent an email to the members of the Legacy Club, advising them, for the first time, that (i) he had given all the shares of HFM (and, thus, the Legacy Club) to his *alma mater*, WPI, in March of 2016 and, (ii)

in accord with his agreement with WPI (the "WPI—Foisie Agreement"), he had appointed a Board of Overseers for the Legacy Club. *See* Exhibit 4, April 28, 2017 email from Bob Foisie to Members.

24.     In July 2019, Plaintiff and certain other equity owners of memberships in the Legacy Club became aware that WPI was negotiating to sell the Legacy Club to a third party.  Shortly thereafter, Plaintiff and residents of The Reserve, who owned equity golf and tennis master memberships in the Legacy Club, formed an informal committee to gather information, retain legal counsel, and ascertain their rights and HFM's obligations under the Plan of Offering's Turnover Agreement.

25.     In 2019, the owner of a Master Membership  in the Legacy Club asked Anna Green, Director of the Club, for its equity membership lists.  Ms. Green advised that the lists of people who purchased equity memberships prior to 2010 had been destroyed by water or chemicals in the maintenance shed where HFM stored them, and then gave him handwritten lists of master and equity Legacy Club members from 2010 to 2019.

26.     After analyzing the Legacy Club's historic documents and handwritten membership lists, Plaintiff became convinced that 350 master or equity golf memberships in the Legacy Club had been sold.

27.     In 2020, Plaintiff attempted to ascertain the precise number of equity golf and equity tennis master memberships, standalone equity golf memberships and standalone equity tennis memberships HFM had sold.   Given Ms. Green's

representation that more than fifteen years of membership records had been destroyed, the Legacy Club's membership directories from 1996, 1999 through 2003 and 2005 through 2019 were gathered, then analyzed in December 2020 and January of 2021.

**C.** **The WPI-Foisie Agreement**

28. HFM and its owner, WPI, are required to abide by the governing documents of the Legacy Club, *e.g.*, the Plan of Offering, Articles of Incorporation and By-Laws for the Legacy Club.

29. The Articles of Incorporation and By-Laws for the Legacy Club authorize it to act only in furtherance of its purpose, *i.e.,* owning and operating a private club exclusively for the pleasure and recreation of its members. Exhibit 1 at 35, 49.

30. Pursuant to the Plan of Offering,

> In exchange for all of the dues, fees and other charges collected by the Club for use of the Club facilities, the Company [HFM] or its agents will operate the Club facilities, until the Turnover Date, in a manner that is similar to the operation of comparable country club facilities.

Exhibit 1 at  18.

31. The Plan of Offering required HFM to fund all the Legacy Club's deficits for operating expenses and capital improvements and to refrain from collecting assessments from the members, but permitted HFM to retain the Legacy Club's profits, until the Turnover Date. *Id.*

32.     Prior to Plaintiff's receipt of the April 28, 2017 email from Bob Foisie, he was not aware that Bob Foisie had transferred HFM to WPI and entered into the WPI — Foisie Agreement.

33.     Bob Foisie did not provide a copy of the WPI – Foisie Agreement to Plaintiff or, to Plaintiff's knowledge, to any other member of the Legacy Club.

34.     According to Bob Foisie's April 28, 2017 email, the WPI — Foisie agreement required HFM to give WPI a $300,000 "gift" from the Legacy Club each year, beginning in 2016.

35.     Based on statements by Jeffrey Solomon, the Executive Vice President and Chief Financial Officer of WPI, Plaintiff believes and therefore avers that HFM has caused the Legacy Club to give WPI at least $1,500,000 since March 2016.

36.     Upon information and belief, since March of 2016, HFM also has taken funds from the Legacy Club to pay its and WPI's expenses, such as the attorneys' fees and costs for litigating against the Club's equity/voting members.

37.     Under the Plan of Offering, HFM's obligation to turn the Legacy Club over to the Club's equity members on the Turnover Date is  automatic.  The Plan of Offering does not require the equity members of the Legacy Club to request that HFM turn the Club over to them.

38.     HFM did not have a contractual right to continue to own and operate the Legacy Club and keep its profits for more than sixty days after the Turnover Date.  Thus, causing the Legacy Club to give WPI hundreds of thousands of dollars

per year and to underwrite the litigation expenses of WPI and HFM after the Turnover Date are breaches of HFM's and WPI's contractual obligations to the Legacy Club's equity/voting members.

39.     All sums from the Legacy Club, which HFM gave to WPI or used to pay for its or WPI's expenses in breach of the Plan of Offering should be accounted for and then returned to the Club.

**D.          HFM's Sales of Equity/Voting Memberships in the Legacy Club**

40.     Between September 1996 and December 31, 2013, 175 people purchased equity golf and equity tennis master memberships in the Legacy Club.

41.     In 2017, Plaintiffs learned that HFM, Inc. had leased the Legacy Club's tennis facilities to Aldo Burga, a tennis professional, and had stopped selling standalone equity tennis memberships in the Legacy Club during or prior to 2015.

42.     By ceasing the sale of tennis memberships, HFM interfered with the ability to sell standalone equity tennis memberships in the Legacy Club and also avoided the obligation to build more tennis courts at the club as the Plan of Offering required.

43.     Several weeks before filing this Complaint, Plaintiff gave HFM and WPI copies of the Legacy Club membership directories that had been reviewed, as well as spreadsheets derived from the directories, which identified all equity Club members. The spreadsheets listing the Master Equity Golf and Tennis Members, the standalone Equity Golf Members and the Standalone Equity Tennis Members are attached as

Exhibits 5-A, 5-B and 5-C, respectively

44.     The review of the Legacy Club's membership directories in December 2020 and January 2021 revealed that 518 equity golf and tennis master memberships, 186 standalone equity golf memberships, and 69 standalone equity tennis memberships had been sold from 1984 through 2019.

45.     The review of the Legacy Club's directories in 2020-21 also revealed that, by the end of 2008, more than 350 equity golf and equity tennis master memberships had been sold.  The Plan of Offering defines a master membership as an equity golf membership and an equity tennis membership.[1]  Thus, by the end of 2008, 350 equity golf memberships and 350 equity tennis memberships had been sold.  In other words, by January 1, 2009, the Turnover Date had occurred.

46.     In fact, HFM has sold far more than the 350 equity golf memberships and 450 equity tennis memberships that the Plan of Offering permits it to issue and sell.

47.     In the alternative, if all the conditions to turnover have not been met, Plaintiff believes and therefore avers that, by ceasing to sell equity tennis memberships, HFM made it impossible to meet the turnover requirement of selling 180 tennis memberships.

E.          **HFM's and WPI's Breaches of the Plan of Offering**

---

[1] Exhibit 1 at 8. The Bylaws of The Legacy Club provide that a "master membership entitles use [sic] of all the facilities of the Club, including the golf course, tennis courts" (exhibit 1 at 62 §2), while The Reserve Club's Bylaws state that "combined golf and tennis members will be counted as members in both categories." *Id.* at 37.

48. HFM has operated, controlled and managed the Legacy Club since 1996. Exhibit 1 at 7.

49. The Plan of Offering required HFM to cede the assets of and control over the Legacy Club to the equity members within sixty (60) days of the sale of 350 equity golf memberships and 180 equity tennis memberships.

50. As the owner and manager of the Legacy Club, at all material times, HFM knew, or should have known, how many equity/voting memberships it had sold, which members had paid the subscription amounts and which members had paid dues. HFM – and, through HFM, WPI — also knew, or should have known, that the Turnover Date had occurred more than sixty days before March 1, 2016.

51. Bob Foisie transferred all stock in and ownership of HFM to WPI after the Turnover Date. The stock transfer is *ultra vires* and a material breach of the Plan of Offering because it violates the requirement in the Plan of Offering for HFM to cede ownership, management and control of the Legacy Club to its equity/voting members on the Turnover Date.

52. The WPI—Foisie Agreement likewise was made after the Turnover Day; it too is *ultra vires* and a material breach of the Plan of Offering.

53. Since April 2017, WPI has attempted to sell the Legacy Club on more than one occasion, in clear contravention of the turnover requirements of the Plan of Offering.

54. Despite knowing that more than 350 equity golf and 180 equity tennis master memberships had been sold and that HFM was contractually obligated to turn

the Legacy Club over to its equity members, in 2019 and 2020, WPI attempted to sell the Legacy Club several times, *e.g.,* to Charles Staples, Golfbank Holdings, Inc., and Robert Baldassari. By attempting to sell the Legacy Club to third parties, instead of the equity/voting members, after the conditions to turnover had been met, WPI violated the Plan of Offering, as well as the Club's Articles of Incorporation, as amended, which provide that "a majority vote of all the golf and tennis members and a majority vote of all the members of the Board of Governors shall be required to authorize or approve … the sale, lease, exchange, transfer or other disposition of all or substantially all of the Club's assets." Exhibit 1 at  40, Article XVI.  Plaintiff and other equity members of the Club were not asked to approve the plan to sell the Legacy Club's assets to Mr. Staples, Golfbank Holdings, Inc. or Mr. Baldassari.

55.     In the Plan of Offering, HFM acknowledged that payment of damages would not be adequate if the turnover provisions in the Plan of Offering were breached and that injunctive relief and specific performance were necessary remedies. *See* Exhibit 1 at 33, ¶14.

56.     More specifically, the Agreement to Turnover, which comprises Exhibit B to the Plan of Offering, provides,

> Right of Specific Performance. The parties agree that damages at law would be an inadequate remedy for any breach of this Agreement (including, without limitation, the failure of Company to transfer control of the management of the Club to the Club members or deliver the Assets to the Club or the failure  of the Club to accept transfer of its management or deliver of the Asset(s)), and that, in addition to any other remedies to which it would otherwise be entitled, that each party shall be entitled to specific performance and injunctive

relief with respect thereto.

Exhibit 1 at  33, ¶ 14.

57.     Selling the Legacy Club to any other third party after the Turnover Date is a material breach of the Plan of Offering, is materially adverse to the interests of Plaintiff and the Class members, and would injure Plaintiff and the Class members, who have contractual rights to jointly own and control the Club.

58.     By retaining the profits of the Legacy Club after the Turnover Date, HFM breached the Plan of Offering.

59.     By giving and accepting "gifts" of $300,000.00 a year from the Legacy Club's income since 2016, respectively, and using the Club's profits for their own benefit,  HFM and WPI breached the Plan of Offering and diluted the value of the property that Plaintiff and the Class contractually are entitled to own.

60.     Plaintiff engaged the undersigned attorney to prosecute this action on behalf of Plaintiffs and all similarly situated persons. Plaintiff is obligated to reimburse his attorney for the costs incurred and to pay a reasonable fee for the attorney's services.

61.     All conditions precedent to the relief demanded herein have been performed, have occurred or have been excused by Defendants' conduct.

### **Class Representation Allegations**

62.     Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2), on behalf of himself and a class consisting of all owners of equity memberships at the Legacy Golf & Tennis Club, Inc., which formerly was

known as The Reserve Golf & Tennis Club, Inc.  (the "Class").

63.     Plaintiff's claims involve questions of law and fact that are common to each member of the Class. Among the questions of law and fact common to Plaintiff and the members of the Class are:

   a. Whether the conditions for turning the Legacy Club over to its equity members have occurred.

   b. When the Turnover Date occurred.

   c. If the requirements for turnover have not occurred, whether the doctrine of impossibility of performance excuses Plaintiff from meeting the tennis turnover requirement because HFM made it impossible for equity tennis memberships to be sold.

   d. Whether the transfer of HFM's stock to WPI is *ultra vires* and therefore void.

   e. Whether the WPI—Foisie Agreement is *ultra vires* and therefore void.

   f. Whether WPI and HFM are contractually obligated to turn the Legacy Club over to the Class of equity/voting Club members in accord with the provisions of the Plan of Offering.

   g. Whether HFM violated the Plan, and thus breached its contract with the Class after the Turnover Date, by giving $300,000 from the Club's income to WPI each year since 2016, spending sums from the Club's coffers on its and WPI's expenses and keeping the profits from the Legacy Club's operation.

   h. Whether WPI violated the Plan after the Turnover Date, and thus breached its contract with the class, by accepting $300,000 from the Club's income each year since 2016 and/or permitting HFM to spend sums from the Club's coffers on its and WPI's expenses.

   i. Whether WPI must return to the Legacy Club all "gifts" given to WPI from the Club's coffers and all sums taken from the Club in contravention of the Plan of Offering and, if so, the amount WPI must return.

14

j.  Whether HFM must return to the Legacy Club all profits taken from the Club and all other sums spent in contravention of the Plan of Offering after the Turnover Date and, if so, the amount HFM must return.

k.  Whether WPI violated the Plan by attempting to sell the Legacy Club to third parties.

l.  Whether the Plaintiff and members of the Class are entitled to declaratory, supplemental and injunctive relief and damages for the conduct of the Defendants.

m.  What amount does the Plan of Offering require the Class to pay WPI or HFM to purchase the Legacy Club.

64.  The Plaintiff's claims are typical of the claims of the Class because, as equity/voting members of the Legacy Club, Plaintiff and the Class members all were damaged in the same manner by the Defendants' conduct.

65.  Based on the review of the Legacy Club's member directories and allowing for any undetected errors in them, Plaintiff estimates that there are 750 members in the Class.

66.  Plaintiff will fairly and adequately protect and represent the interests of the members of the Class because Plaintiff's interests are fully aligned with the interests of the Class members.

67.  Plaintiff has retained counsel experienced in the litigation of claims like those in this action, who does not have any conflict of interest with other Class members in the maintenance of this Class action.

68.  Plaintiff will vigorously pursue the claims of the Class.

69.  Upon information and belief, the Class members have not begun any

litigation concerning the controversy set forth in this complaint.

70.     The particular facts and circumstances that support maintenance of this action as a class action pursuant to Rule 23 are:

      a.     WPI and HFM have breached the Plan of Offering.

      b.     Plaintiff and members of the Class are entitled to

           declaratory, supplemental and injunctive relief and

damages.

## COUNT I-DECLARATORY AND SUPPLEMENTAL RELIEF

71.     Plaintiff incorporates paragraphs 1 through 70 of the Complaint as if they were set forth in full herein.

72.     A *bona fide*, justiciable controversy exists between (i) Plaintiff and the Class members and (ii) HFM and WPI as to:

a. Whether the conditions for turning the Legacy Club over to its equity members have been met.

b. When the Turnover Date occurred.

c. Whether the transfer of HFM's stock to WPI is *ultra vires* and therefore void.

d. Whether the WPI—Foisie Agreement is *ultra vires* and therefore void.

e. Whether HFM is contractually obligated to turn the Club over to the class of equity Club members in accord with the provisions of the Plan.

f. Whether HFM violated the Plan, and thus breached its contract with the Class, by giving $300,000 from the Club's income to WPI each year since 2016 and spending sums from the Club's coffers on its and WPI's expenses after the Turnover Date.

g. Whether WPI must account to the Class for all sums it received from the Legacy Club after the Turnover Date.

h.  Whether HFM must account to the Class for all sums it took from the Legacy Club after the Turnover Date.

i.  Whether WPI must return to the Club all "gifts" and other sums it received from the Legacy Club in breach of the Plan of Offering and, if so, the amount it must return.

j.  Whether HFM must return to the Legacy Club all sums it took from the Legacy Club in breach of the Plan of Offering and, if so, the amount it must return.

k.  Whether Defendants violated the Plan by attempting to sell the Legacy Club to third parties.

l.  If the conditions for turnover have not been met, whether the doctrine of impossibility of performance excuses Plaintiff from meeting the tennis turnover requirement because HFM made it impossible for 180 tennis memberships to be sold.

73.    Plaintiff seeks a declaration of the class members' rights and the obligations of HFM and WPI under the Plan of Offering.

74.    A favorable ruling from the Court would redress the class members' injuries.

WHEREFORE, Plaintiff requests that the Court enter judgment declaring that: (i) the conditions for turning the Legacy Club over to its equity members have been met and establishing the Turnover Date; (ii) if the turnover requirements have not been met, the doctrine of impossibility of performance excuses Plaintiff from meeting the turnover requirement of 180 equity tennis memberships; (iii) HFM is contractually obligated to turn the Legacy Club over to its equity members in accord with the provisions of the Plan of Offering; (iv) HFM has violated the Plan of Offering by taking funds from the Club and giving them to WPI or using them for HFM's or WPI's expenses after the Turnover Date; (v) the Plan of Offering prohibits

WPI from selling the Legacy Club to a third party in derogation of the Turnover Agreement; and (vi) WPI and HFM must account for and return to the Legacy Club all the sums WPI received from the Club and HFM took from the Club after the Turnover Date with pre-judgment interest at the statutory rate. Plaintiffs also pray for an award of their costs and any other relief that the Court deems appropriate.

## COUNT II-EQUITABLE ACCOUNTING

75.     Plaintiff incorporates paragraphs 1 through 70 of his Complaint as if they were set forth in full herein.

76.     Despite knowing that the Turnover Date occurred in late 2008 or early 2009, HFM has not turned the Legacy Club over to its equity members.

77.     Despite knowing that the Turnover Date occurred in late 2008 or early 2009 and that it had a contractual obligation to turn the Legacy Club over to its equity/voting members, HFM has continued to operate and manage the Club and retain the profits from the Club's operations in breach of the Plan of Offering.

78.     Despite knowing that the Turnover Date occurred prior to March 2016 when Mr. Foisie gave HFM to it and that HFM, and therefore WPI, had a contractual obligation to turn the Legacy Club over to its equity/voting members, WPI has not turned the Legacy Club over to the Club's equity members and has accepted "gifts" in excess of $1.5 million from the Club's coffers, in breach of the Plan of Offering.

79.     HFM did not have a legal right to retain or distribute the profits from

the Legacy Club after the Turnover Date; rather, the equity members of the Club had the right to own, control and manage the Club and determine how the Club's profits should be spent.

80.     HFM damaged the equity members of the Legacy Club by (i) unlawfully retaining the profits from the Club for more than 12 years, (ii) giving gifts to WPI from the Club's coffers, and (iii) thereby diminishing the value of the Club that the equity members should already have owned and operated.

81.     HFM's employee, Anna Greene, admits that the Legacy Club's books and records from 1984 through 2009 have been destroyed or lost.

82.     Plaintiff is unable to ascertain the amount of the Legacy Club's profits that HFM has retained or distributed to WPI in breach of the Plan of Offering since 2009.

83.     In the Plan of Offering, HFM acknowledged that, if it failed to turn the Legacy Club over to the equity members, the members would not have an adequate remedy at law and would need equitable relief.

84.     Plaintiff does not have an adequate remedy at law.

WHEREFORE Plaintiff requests the Court to judgment requiring WPI and HFM each to account for all sums it received or took from the Legacy Club after the Turnover Date, and to return such sums, plus prejudgment interest at the statutory  rate, to the Club. Plaintiff also prays for an award of his costs and any other relief that the Court deems appropriate.

## COUNT III-INJUNCTIVE RELIEF

85.     Plaintiff incorporates paragraphs 1 through 70 of his Complaint as if they were set forth in full herein.

86.     Despite knowing that the Turnover Date has passed, has failed to turn the Legacy Club over to its equity members.

87.     Despite knowing that the Turnover Date has passed, WPI has attempted to sell the Legacy Club to third parties in contravention of the turnover provisions in the Plan of Offering.

88.     In the Plan of Offering, HFM acknowledged that, if it failed to turn the Legacy Club over to the equity members, the members would not have an adequate remedy at law and would need injunctive relief.

89.     Plaintiff and the Class will be irreparably harmed by the loss of the Legacy Club in which they have invested for many years if WPI and HFM are not forced to turn the Club over to its equity members and are allowed to sell it to a third party.

90.     Given that Florida law favors the enforcement of contracts, public policy would not be contravened if WPI were enjoined from selling the Legacy Club to a third party and required to turn it over to Plaintiff and the Class members.

91.     Given the clear terms of the Plan of Offering, Plaintiff is reasonably likely to prevail on the merits of his Complaint.

92.     Plaintiff does not have an adequate remedy at law.

WHEREFORE Plaintiff requests the Court to enter a permanent injunction, restraining WPI and HFM from selling the Legacy Club to a third party, requiring them to turn the Legacy Club over to Plaintiff and the Class members in accord with the Plan of Offering and requiring WPI and HFM to return to the Club all sums HFM paid to WPI as gifts and all sums HFM took from the Club to pay its or WPI's expenses after the Turnover Date with prejudgment interest at the statutory rate. Plaintiff also prays for an award of his costs and any other relief that the Court deems appropriate.

Date: February 22, 2021                    Respectfully submitted,

                                           ELAINE JOHNSON JAMES, P.A.
                                           P.O. Box 31512
                                           Palm Beach Gardens, FL 33420
                                           Telephone: (561) 245-1144
                                           Facsimile: (561) 244-9580
                                           By: /s/ *Elaine Johnson James*
                                           Florida Bar No. 791709
                                           ejames@elainejohnsonjames.com
                                           ejjames50@icloud.com

                                           *Attorney for Plaintiff*